UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY D'AMICO and <br> ANTHONY ANDRICH, <br><br> Plaintiffs, <br><br> v. <br><br> BUILDING MATERIAL, LUMBERBOX, <br> SHAVING, ROOFING AND INSULATING <br> CHAUFFEURS, TEAMSTERS, <br> WAREHOUSEMEN AND HELPERS, AND <br> RELATED INDUSTRY EMPLOYEES, <br> WATCHMEN AND SECURITY GUARDS <br> LOCAL UNION # 786, AFFILIATED <br> WITH THE INTERNATIONAL <br> BROTHERHOOD OF TEAMSTERS, <br> LUIGI MAZZEI, ALAN YURGIL, <br> MAUREEN FURIO-DUGAN, EDWARD <br> RIZZO, EUGENE MCCARTNEY, MICHAEL <br> YAUGER and JAMES VRANKOVICH, <br><br> Defendants. | 02 C 0120 <br><br> Judge George M. Marovich |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Anthony D'Amico ("D'Amico") and Anthony Andrich ("Andrich") filed an eight-count amended complaint against defendants (1) Building, Material, Lumberbox, Shaving, Roofing and Insulating, Chauffeurs, Teamsters and Warehousemen and Helpers and Related Industry Employees, Watchmen and Security Guards Local Union Number 786 ("Local 786"), affiliated with the International Brotherhood of Teamsters (the "IBT"); (2) Luigi Mazzei ("Mazzei"); (3) Alan Yurgil ("Yurgil"); (4) Maureen Furio-Dugan ("Furio-Dugan"); (5) Edward Rizzo ("Rizzo"); (6) Eugene McCartney ("McCartney"); (7) Michael Yauger ("Yauger"); and (8) James Vrankovich ("Vrankovich"). In their amended complaint, plaintiffs assert claims under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401, et. seq.,

claims for breach of the IBT's constitution, a claim for tortious interference with business relationship and a claim for retaliatory discharge.

Before the Court are cross-motions for summary judgment. Specifically, plaintiffs have moved for summary judgment against the defendants on Counts III, IV, V and VI.[1] Seven of the defendants--Local 786, Mazzei, Yurgil, Rizzo, McCartney, Yauger and Vrankovich (collectively, the "defendants")--have moved for summary judgment on all of plaintiffs' claims.

For the reasons set forth below, the Court denies plaintiffs' motion for summary judgment in its entirety. The Court grants in part and denies in part defendants' motion for summary judgment.

I. **Background**

This case arises from the attempts of a union–which had had a prior brush with corruption–to avoid corruption (or at least the appearance thereof). The following facts are undisputed unless otherwise noted.[2]

---

[1] Defendant Furio-Dugan has not filed an appearance in this case, and she has not responded to plaintiffs' motion for summary judgment. (It is unclear whether she was ever served with plaintiffs' complaint or amended complaint.) Because plaintiffs did not serve Furio-Dugan with a copy of the motion for summary judgment, the motion for summary judgment is denied as to defendant Furio-Dugan.

[2] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces the rule strictly. Facts that are submitted but do not conform with the rule are not considered by the Court. For example, facts not included in a party's Statement of Material Facts or in a party's Statement of Additional Facts are not considered by the Court because to do so would rob other parties of the opportunity to show such facts are disputed. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. Similarly, where one party supports a fact with admissible evidence and the other party denies the fact without citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004).

Defendant Local 786 is a local affiliate of the International Brotherhood of Teamsters. Local 786 is run by an Executive Board, which consists of a President, Vice-President, Secretary-Treasurer, Recording Secretary and three Trustees. All of the members of the Executive Board are elected by the members of Local 786. Generally, Local 786 holds elections in November for a term running from January 1 through December 31 of the following year.

Not long before the events leading to this suit, Local 786 found itself involved in the "Silver Shovel" investigation, a federal investigation into public corruption in Chicago. As of January 1996, Walter Hoff was the President of Local 786. In that capacity, he had negotiated labor agreements with John Christopher ("Christopher")–the owner of several trucking companies and, unbeknownst to Walter Hoff, a government informant in the Silver Shovel investigation. In January 1996, the FBI served on Local 786 a subpoena seeking documents related to its investigation. Walter Hoff was accused of receiving payments from Christopher in exchange for not collecting health and welfare and pension fund contributions from certain employers of Local 786 members. Ultimately, Walter Hoff pled guilty and was convicted of a felony. Walter Hoff did not run for re-election in November 1996.

Instead, in November 1996, the members of Local 786 elected an Executive Board slate consisting of Mazzei as President, Andrich as Vice President, Yauger as Recording Secretary, Leroy Santoro ("Santoro") as Secretary-Treasurer and D'Amico, McCartney and Yurgil as Trustees. Walter Hoff resigned his position as President on November 30, 1996, and Mazzei (the President-elect) assumed the position on December 2, 1996.

The same day he assumed his duties as President, Mazzei met with D'Amico and Andrich. Four days later, on December 6, 1996, Mazzei had a meeting with D'Amico, Andrich and Jeffrey Hoff, who administered the Local 786 pension funds. It is not clear what was said at the meetings.

What is clear is that at the end of the December 6, 1996 meeting, Mazzei fired Andrich and D'Amico as business agents of Local 786. Andrich and D'Amico did not attend a meeting of the Executive Board later that day. At the Executive Board meeting, Mazzei informed the Executive Board that he had removed Andrich and D'Amico as business agents and asked for their resignations as officers.

On the same day, Mazzei filed charges against Andrich and D'Amico. In the charges, Mazzei alleged that Andrich and D'Amico had admitted to him on both December 2 and 6 that they had met with James Vincent Cozzo ("Cozzo") to discuss the fall 1996 union election. The problem with plaintiffs' having met with Cozzo was that it violated a consent decree. Cozzo had once been a member of Local 786. A 1989 consent decree between the United States Department of Justice and the IBT barred Cozzo from membership or association with Local 786 or the IBT. The consent decree also prohibited members of Local 786 from associating with members of organized crime concerning any matters relating to the IBT or its local affiliates.

Ultimately, the charges against Andrich and D'Amico were tried before a Trial Board. Pursuant to the IBT Constitution, the Trial Board consists of members of the Executive Board. In the event that a member of the Executive Board is either a charging or a charged party, the IBT Constitution provides that such individual is to be replaced on the Trial Board. Accordingly, Mazzei (who filed the charges) and Andrich and D'Amico (who were charged) were excluded from the Trial Board. Instead, Rizzo, Furio-Dugan and Vrankovich (all members in good standing) served on the Trial Board. Before the trial, Santoro served Andrich and D'Amico with the charges by mail.

On January 7, 1997, the Trial Board held a hearing on the charges against Andrich and D'Amico. At the hearing, Andrich and D'Amico were represented by a member in good standing. The Trial Board found both D'Amico and Andrich guilty of the charges and barred

them from membership in Local 786. Because one cannot hold office in Local 786 without being a member, Andrich and D'Amico were also removed as Vice-President and Trustee, respectively.

In connection with their motion for summary judgment, plaintiffs put forth the deposition testimony of Furio-Dugan, who testified that Mazzei told her she had to be on *a* panel and had to find "them" guilty or her job would be in jeopardy. It is not clear from the parties' submissions whether or not Furio-Dugan was referring to Andrich and D'Amico. Plaintiffs have put forth no evidence connecting these statements with the hearing or the charges against Andrich and D'Amico, and defendants dispute that the statements are connected. On January 8, 1997, after the hearing on the charges against D'Amico and Andrich, Rizzo was appointed to fill the Trustee seat vacated by D'Amico. At the same time, Yurgil was appointed to fill the Vice President position vacated by Andrich.

Separate and apart from the hearings against D'Amico and Andrich, Local 786 had a hearing on charges against Walter Hoff and another individual, both of whom were found guilty and barred from Local 786. Upon review by the Independent Review Board Administrator ("IRB"), the IRB informed Local 786 that the penalty against Walter Hoff and the other individual should be amended to include permanent exclusion from the IBT, IBT work and IBT benefits (except fully vested pension benefits).

This letter apparently tipped off the Executive Board to the idea that Andrich and D'Amico should also have been permanently barred from the IBT, IBT work and IBT benefits (except fully vested pension benefits). Thus, on March 4, 1997, the Executive Board amended the decisions against D'Amico and Andrich to include a permanent ban from the IBT, IBT work and IBT benefits (other than fully vested pension benefits). Also on March 4, 1997, the Executive Board sent certified letters to plaintiffs to that effect, though plaintiffs claim not to have received the letters.

D'Amico and Andrich appealed the Trial Board's decision to Joint Counsel 25. Joint Counsel 25 ruled, in relevant part:

> The trial body in their decision noted that same was based on their assessment of the demeanor of the witnesses, contradictions in Brother Andrich's own testimony, and the corroboration of Mazzei's testimony by Brother [Jeffrey] Hoff.
>
> The transcript of the hearing before the trial body shows significant and substantial disagreement among the parties regarding the underlying facts. Determination of the credibility of the witnesses was clearly critical. The trial body is in a superior position to the Joint Council to observe the witnesses while testifying, to judge their credibility and to determine the weight their testimony should receive. The trial body credited the testimony of Brothers Mazzei and [Jeffrey] Hoff over that of Brothers Andrich and D'Amico.
>
> Under the above circumstances the Joint Council affirms the decision of the Local 786 Executive Board.

Next, D'Amico and Andrich appealed to the International Union General Executive Board, which affirmed the decision of Joint Council 25. In November 1997, the International Union General Executive Board concluded:

> In sum, the Joint Council correctly found, based on the evidence, that the charged parties knowingly engaged in a prohibited association with organized crime member James Cozzo. The charged parties have simply not provided any basis for overturning the Joint Council's decision and none can be found in the record.

In June 2001, Andrich and D'Amico appealed the November 1997 decision of the International Union General Executive Board to the International Union Convention. An Appeal's Committee conducted a hearing regarding the appeal and recommended reversing the decision. Specifically, the Appeals Committee recommended, in relevant part:

> In order for the charges brought under this provision to be sustained, the Constitution requires that they be supported by a preponderance of reliable evidence. While the charges in this case are of a very serious nature, the evidence submitted in support thereof does not rise to this level.

> At issue is whether Brothers Andrich and D'Amico participated in a meeting with Mr. Cozzo to discuss the Local's election. The only evidence presented to support this charge was the testimony of Brothers Mazzei and [Jeffrey] Hoff who stated that Brothers Andrich and D'Amico admitted to attending such a meeting. Brother Mazzei acknowledged that there is no evidence that the meeting in fact took place. While such admissions are valuable pieces of evidence, they must be given appropriate weight. In this case, Brothers Andrich and D'Amico denied participating in a meeting with Mr. Cozzo or advising Brother Mazzei that they attended any such meeting. Their denials of having met with Mr. Cozzo were consistent with their testimony before the IRB. Although the statements attributed to Brothers Andrich and D'Amico were corroborated by Brother Hoff and it was alleged that Brother Andrich contradicted himself during the December 6, 1996 meeting, this evidence alone fails to establish that a meeting took place with Mr. Cozzo. It is appropriate to take into consideration the credibility of the witnesses, the Appeals and Grievance Committee had an opportunity to participate in a teleconference with all parties and found Brothers Andrich and D'Amico to be more credible in the presentations of their positions.
>
> Given an absence of a preponderance of reliable evidence upon which the charges against Brothers Andrich and D'Amico could be sustained, it is the recommendation of the Appeals and Grievance Committee that the decision of the General Executive Board be reversed and the charges dismissed.

Based on the recommendation, the International Union Convention voted to sustain plaintiffs' appeals, and the decisions were reversed.

After the International Union Convention's decision, Andrich never took any steps to reinstate his membership in Local 786. D'Amico, on the other hand, reinstated his membership and participated in the 2002 election of officers.

D'Amico and Andrich's challenges to and appeals of their expulsion and loss of employment were not the only challenges they filed. Rather, after an election in 1997, D'Amico filed an election protest alleging that Andrich was denied admission to a membership meeting at Local 786. (The timing of the membership meeting and substance of the protest are not included in the parties' filings.) An Election Protest Coordinator investigated and denied the protest, stating:

-7-

> In the instant matter, the Election officer finds that there have been serious animosities between Messrs. D'Amico and Andrich on the one side, and Mr. Mazzei and the local union on the other. The primary source of this conflict–the termination of employment and expulsion from the local union of both Messrs. Andrich and D'Amico–in fact preceded their public support for Mr. Hoffa. Consequently, the investigation does not support the protester's contention that Mr. Andrich's rejection from the membership meeting was due to his support for Mr. Hoffa rather than to his long-standing dispute with the local union leadership. This is particularly so in light of the fact that while both Mr. D'Amico and Mr. Andrich were equally supportive of Mr. Hoffa, only Mr. Andrich was barred from the membership meeting. The Election Officer is not free to remedy adverse conduct merely because it occurs in the general context of the election and during the election period, unless the conduct is improper under the Rules.

The parties have put forth no other evidence regarding D'Amico's and/or Andrich's support (or lack thereof) for Mr. Hoffa.

## II. Summary Judgment Standards

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Courtney v. Biosound*, 42 F.3d 414, 418 (7th Cir. 1994).

## III. Discussion

### A. Labor Management Disclosure and Reporting Act

In Count II, plaintiffs allege that defendants disciplined them in retaliation for plaintiffs' exercise of their rights to free speech under the LMRDA. In Counts III and V, plaintiffs allege that defendants violated their due process rights under the LMRDA. Defendants move for summary judgment on Counts II, III and V, while plaintiffs move for summary judgment on Counts III and V.

The LMRDA was "the product of congressional concern with the widespread abuses of power by union leadership." *Finnegan v. Leu*, 456 U.S. 431, 435 (1982). The primary objective of the LMRDA was to ensure "that unions would be democratically governed and responsive to the will of their memberships." *Id.* at 436. In passing the LMRDA, Congress sought to protect "rank-and-file union members--not union officers or employees." *Id.* at 437.

To those ends, the LMRDA provides several types of protection to union members. First, the LMRDA prohibits a union from taking certain action against members without due process. Specifically, the LMRDA provides, in relevant part:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(1)(5).

The LMRDA also prevents retaliation. Section 609 of the LMRDA provides:

> It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right

to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 529. The free speech rights at issue in this case are described in 29 U.S.C. § 411(a)(2), which provides:

> (2) **Freedom of speech and assembly**
> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, that nothing herein shall be construed to impair the right of the labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(1) & (2).

### 1. Due process

In Count III, plaintiffs allege that they were denied due process in connection with the January 7, 1997 expulsion from Local 786. In Count V, plaintiffs allege they were denied due process in connection with the March 4, 1997 expulsion from the IBT, IBT work and IBT benefits (other than vested benefits).

Defendants' first argument in support of their motion for summary judgment is that plaintiffs cannot bring a due process claim because the LMRDA does not protect the jobs of union employees. Defendants are correct, but their argument does not entitle them to summary judgment. In *Finnegan v. Leu*, 456 U.S. 431, 438 (1982), the Supreme Court concluded that actionable "discipline" under the LMRDA did not include the discharge of union employees. The Court noted that the LMRDA was not intended "to establish a system of job security or

tenure for appointed union employees." *Id.* Rather, the "discipline" language was meant "to refer only to punitive actions diminishing membership rights, and not to termination of a member's status as an appointed union employee." *Id.* Accordingly, defendants are correct that the LMRDA does not provide plaintiffs a cause of action to challenge the December 6, 1996 termination of their employment with Local 786. But what plaintiffs can (and attempt to) challenge is Local 786's decision to suspend their membership in Local 786, which suspension also lead directly to their loss of their positions as elected officials (because one cannot serve as an elected officer of Local 786 without being a member).

With respect to the due process claim based on Local 786's decision to suspend plaintiffs' membership in Local 786, defendants argue that plaintiffs' claims are moot. Whatever due process plaintiffs failed to receive from Local 786, defendants argue, was later provided to plaintiffs when the decision was reversed by the International Union Convention. Plaintiffs are no longer barred from membership in Local 786 or the IBT. Were membership the only remedy available to plaintiffs for a violation of the LMRDA, then defendants would be correct that plaintiffs' due process claims are moot. *See Chavis v. Rowe*, 643 F.2d 1281, 1287-88 (7th Cir. 1981) (due process claim not mooted upon vacation of decision violating due process where plaintiff was still entitled to damages). The LMRDA, however, provides for damages. See 29 U.S.C. § 412 ("Any person whose rights secured by the provisions of this subchapter have been infringed by any violations of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."); *Kinslow v. American Postal Workers Union, Chi. Local*, 222 F.3d 269, 277-78 (7th Cir. 2000) (discussing damages available under the LMRDA). It is not clear from the parties' submissions whether

-11-

plaintiffs will be entitled to any damages. They cannot, for example, collect back pay for their loss of employment as business agents, because that loss is not actionable under the LMRDA. They may be able to prove damages due to lost compensation for their service as elected officials or for jobs they lost due to their lack of membership in Local 786 or the IBT (taking into consideration, of course, their duty to mitigate). Unless and until it becomes clear that the Court can provide no relief to plaintiffs, their claims are not moot.

Accordingly, the Court turns to the merits of the parties' cross-motions for summary judgment on plaintiffs' due process claims. As the Seventh Circuit has explained about the due process requirements of the LMRDA:

> While the union member need not necessarily be provided with the full panoply of procedural safeguards found in criminal proceedings, the fundamental and traditional concepts of due process do apply to the union disciplinary hearing.

*Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir. 1975). The statute sets out three due process requirements: service of specific written charges, a reasonable amount of time to prepare a defense and a full and fair hearing. 29 U.S.C. § 411(a)(1)(5). Certain scenarios are considered to violate inherently a union member's due process rights under the LMRDA. For example, in *Tincher*, the Seventh Circuit concluded that "it is inherently improper for a person who has been charged by an accused in a collateral proceeding to participate as a committee member in the accused's disciplinary hearing." *Tincher*, 520 F.2d at 855.

Here, plaintiffs assert two due process claims. In Count III, plaintiffs allege that they were denied due process in connection with the January 7, 1997 expulsion from Local 786. Plaintiffs argue that the Trial Board was biased. Specifically, plaintiffs assert that Furio-Dugan was told by Mazzei that she would lose her job if she did not serve on a hearing board and find

-12-

"them" guilty. As noted above, plaintiffs have put forth no evidence connecting her testimony with their Trial Board or hearing. Plaintiffs also argue that Yurgil and Rizzo were biased because after D'Amico and Andrich were expelled from Local 786, Yurgil and Rizzo were appointed to fill the then-vacant Vice President and Trustee positions, respectively. This, however, does not establish bias as a matter of law because plaintiffs put forth no evidence that Yurgil and Rizzo knew before D'Amico and Andrich were expelled that they would be appointed to fill the vacant positions. Defendants, for their part, have put forth evidence suggesting a lack of bias. Specifically, the Joint Counsel (the neutrality of which plaintiffs do not question) noted that at the Trial Board's hearing, Andrich and D'Amico contradicted themselves while Mazzei's testimony was corroborated by Jeffrey Hoff. From this evidence, a reasonable jury could find for either plaintiffs or defendants. Accordingly, neither party is entitled to judgment as a matter of law. The Court denies the parties' motions for summary judgment with respect to Count III.

Next, in Count V, plaintiffs allege they were denied due process in connection with the March 4, 1997 decision to expel them from the IBT, IBT work and IBT benefits (other than vested benefits). Plaintiffs were expelled from the IBT because Local 786 realized that the punishment meted out to plaintiffs on January 7, 1997 should have included not only expulsion from Local 786 but also expulsion from the IBT, IBT work and IBT benefits. As the parties agree, Local 786 did not conduct a separate hearing before expelling plaintiffs from the IBT. Rather, Local 786 relied on the January 7, 1997 hearing because the expulsion was part of the penalty for the charges (relating to their interaction with Cozzo) on which plaintiffs had already been given a union trial and found guilty.

Still, plaintiffs argue that they are entitled to new written notice of the charges, additional sufficient time to prepare for a hearing and a new full and fair hearing before being expelled from the IBT. Plaintiffs' argument assumes that a union cannot amend a penalty after a hearing without retrying the charged parties for the same conduct, even if the additional discipline should have been dispensed originally. Plaintiffs cite no case to support that assumption. It is not clear such an assumption is warranted. Where, as here, the penalty was simply an amendment to a prior punishment dispensed after notice and a hearing on those charges, a new trial on the same charges would be a waste of time. Accordingly, the Court concludes the plaintiffs were not entitled to a second round of due process before Local 786 could amend the punishment plaintiffs faced for having discussed Local 786 business with Cozzo.

This, of course, does not mean that the plaintiffs have no claim for a violation of due process. It simply means that their due process claim related to the March 4, 1997 penalty is not distinct from their due process claim related to the January 7, 1997 penalty. Rather, plaintiffs were entitled to due process with respect to discipline arising out of their alleged involvement with Cozzo. As the Court explained above, neither party is entitled to judgment as a matter of law with respect to the January 7, 1997 punishment. Nor have plaintiffs put forth any evidence that the March 4, 1997 punishment violated their due process rights in any way that is different from their evidence that the January 7, 1997 punishment violated their due process rights. This is not a situation where the charged parties were told before a hearing they faced only a fine of $50 and after the hearing were first fined $50 and later fined $50,000. In that situation, the change in the penalty might be thought to violate the charged parties' due process rights either by failing to provide adequate notice or by the lack of a fair trial. For example, such a significant change in a

-14-

penalty might have affected the way the charged parties defended themselves at the hearing. Here, plaintiffs do not suggest that they were not notified of the possibility that they could be expelled from the IBT as well as Local 786 and do not point to any ways in which their defense might have changed. Thus, plaintiffs are not entitled to judgment as a matter of law with respect Count V. Nor are defendants entitled to judgment as a matter of law because, as explained above, plaintiffs put forth sufficient evidence from which a reasonable jury could conclude that the January 7, 1997 hearing was unfair and, hence, that discipline (including the March 4, 1997 discipline) arising out of that hearing violated plaintiffs' due process rights.

The Court denies the parties' motions for summary judgment with respect to Count V.

2. *Free speech*

In Count II, plaintiffs assert that defendants subjected them to discipline in retaliation for plaintiffs' having exercised their LMRDA free speech rights. Section 609 of the LMRDA prohibits the disciplining of members in retaliation for the members' having exercised rights under the LMRDA. 29 U.S.C. § 529. One of the rights union members are guaranteed under the LMRDA is the right to free speech with respect to union matters. 29 U.S.C. § 411(a)(2).

In response to defendants' motion for summary judgment on Count II, plaintiffs argue that defendants retaliated against them for a number of reasons, including D'Amico's alleged criticism of Mazzei with respect to an alleged political deal with Ron Carey, D'Amico's alleged support for James Hoffa as President of the IBT, D'Amico's and Andrich's alleged criticism of the handling of the Walter Hoff investigation and D'Amico's and Andrich's alleged complaints about a union election. Plaintiffs, however, failed to include any facts on these subjects in their Rule 56.1 Statements of Material Facts or Additional Material Facts. Thus, plaintiffs have put

forth no evidence that they engaged in protected free speech, let alone evidence that their free speech was causally related to their loss of membership and ultimate loss of their elected positions. In fact, the only evidence before the Court on any of these subjects is evidence put forth by defendants that D'Amico's support for the campaign of James Hoffa occurred (if at all) after the January 7, 1997 hearing. Accordingly, plaintiffs have put forth no evidence that their loss of membership was in retaliation for their exercise of free speech.

Defendants are entitled to judgment as a matter of law on Count II, and the Court grants defendants' motion for summary judgment on Count II.

### B. Breach of the IBT Constitution

In Counts I, IV and VI of plaintiffs' amended complaint, plaintiffs assert that defendants breached the IBT's Constitution. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, provides a cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations." Plaintiffs move for summary judgment with respect to Counts IV and VI, and defendants move for summary judgment with respect to Counts I, IV and VI.

Neither party has included in its Rule 56.1 Statement of Facts the text of any provisions of the IBT Constitution at issue. Nor has any party put forth evidence as to how, if at all, the Constitution has been breached or not breached as a matter of law. Accordingly, no party has put forth sufficient evidence to establish that he or it is entitled to judgment as a matter of law on any of plaintiffs' claims for violation of the IBT's Constitution.

Accordingly, the Court denies plaintiffs' motion for summary judgment with respect to Counts IV and VI and denies defendants' motion for summary judgment with respect to Counts I, IV and VI.

C. **Tortious interference**

In Count VII, plaintiffs allege that defendants Mazzei, Yurgil, Furio-Dugan, Rizzo, McCartney, Yauger and Vrankovich tortiously interfered with plaintiffs' business relationship with Local 786. Defendants move for summary judgment on this claim on the grounds that the defendants, as agents of Local 786, could not, as a matter of law, interfere with the business relationship between plaintiffs and Local 786.

Under Illinois law, an entity cannot tortiously interfere with its own business relationship. See *Vickers v. Abbott Laboratories*, 719 N.E. 2d 1101, 1116 (1st Dist. 1999); *Quist v. Board of Trustees of Community College Dist. No. 525*, 629 N.E. 2d 807, 811-812 (3rd Dist. 1994). Rather, only a third party can tortiously interfere with the business relationship between plaintiffs and Local 786. *Id.* In this case, each of the individual defendants was acting on behalf of Local 786 (either as its President or as its Trial Board) when s/he allegedly tortiously interfered with plaintiffs' relationship with Local 786. Although plaintiffs *argue* that defendants were acting in their own interests, not in the interests of Local 786, plaintiffs have put forth no *evidence* that defendants were acting in anyone's interests but Local 786's. Accordingly, as a matter of law, defendants did not tortiously interfere with the business relationship between plaintiffs and Local 786.

The Court grants defendants' motion for summary judgment with respect to Count VII.

### D. Retaliatory discharge

Defendants also move for summary judgment with respect to plaintiffs' Count VIII for "wrongful discharge." What plaintiffs caption as a claim for "wrongful discharge," the allegations make clear is meant to be a claim for retaliatory discharge under Illinois law. Specifically, plaintiffs allege in the amended complaint that "[b]ecause it discharged plaintiffs in an attempt to suppress their right to free speech, Local 786 contradicted a clearly mandated public policy, i.e., the right to free speech, in its wrongful discharge of Plaintiffs."

Under Illinois law, an employer may discharge an at-will employee for any reason or no reason so long as the discharge does not violate a clearly mandated public policy. *Barr v. Kelso-Burnett Co.*, 478 N.E. 2d 1354, 1356 (Ill. 1985). In *Kelsay v. Motorola, Inc.*, the Supreme Court of Illinois first recognized a cause of action for discharge in retaliation for having filing a workers' compensation claim. *Kelsay v. Motorola, Inc.*, 384 N.E. 2d 353 (1978). Since then, the Supreme Court of Illinois has expanded the reach of the retaliatory discharge tort to protect whistle-blowers, but it continues to refuse to expand the tort further. See *Zimmerman v. Buchheit Sparta, Inc.*, 645 N.E. 2d 877, 881-82 (Ill. 1995).

In fact, the Supreme Court of Illinois has already held that a retaliatory discharge claim cannot be premised on interference with free-speech rights. *Barr*, 478 N.E. 2d at 1357. Plaintiffs have put forth no evidence suggesting that they were discharged in retaliation for exercising some other right guaranteed by a clearly mandated public policy (such as because they filed a workers' compensation claim) under Illinois law. Accordingly, defendants are entitled to judgment as a matter of law on Count VIII.

The Court grants defendants summary judgment with respect to Count VIII.

## IV. Conclusion

For the reasons set forth above, the Court denies plaintiffs' motion for summary judgment. The Court grants in part and denies in part defendants' motion for summary judgment. Specifically, the Court denies defendants' motion for summary judgment on Counts I, III, IV, V and VI. The Court grants defendants Local 786, Mazzei, Yurgil, Rizzo, McCartney, Yauger and Vrankovich summary judgment with respect to Counts II, VII and VIII.

ENTER:

George M. Marovich
United States District Judge

DATED: 03/01/05